**STATE of Missouri, Respondent,**

v.

**Derrick S. WILLIS, Appellant.**

**No. WD 40096.**

Missouri Court of Appeals,
Western District.

Dec. 20, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 31, 1989.

Application to Transfer Denied
March 14, 1989.

David S. Durbin, Asst. Public Defender,
Kansas City, for appellant.

Robert Frager, Asst. Pros. Atty., Kansas
City, for respondent.

Before SHANGLER, P.J., and
CLARK and NUGENT, JJ.

CLARK, Judge.

Derrick S. Willis was tried by a jury and
was convicted of the offense of first degree
trespass. On this appeal, he raises five
points of alleged trial error among which is
the claim that the evidence was insufficient
to support submission of the case. We
therefore turn first to a review of the evidence.

Accepting as true all evidence,
whether circumstantial or direct, tending to
prove defendant guilty, together with all
reasonable inferences supportive of the
verdict,[1] the following were the facts upon

---

1. *State v. Brooks,* 618 S.W.2d 22, 23 (Mo. banc 1981).

which the jury could have found appellant guilty of trespass.

The evening of February 12, 1987, appellant and his companion, Ronnie Jett, came to the dwelling house at 6229 East 16th Street in Kansas City and, after opening the gate, entered the fenced front yard. The premises were the residence of Richard Norris and George Nickerson. Present in the house at that time were Norris, Nickerson and a guest, Raymond Younce. Appellant and Jett continued on the way to the front door where their knock summoned Norris who had also been alerted by the barking of Nickerson's dog. When Norris opened the door, appellant and Jett entered and immediately thereafter, a fight ensued with the result that appellant and Jett were severely beaten.

Appellant and Jett were strangers to Norris, Nickerson and Younce. After he had been subdued, appellant was questioned by Norris, Nickerson and Younce about his objective. Appellant said he had been sent there to rob the occupants. Appellant denied this and contended in his defense that he and Jett were responding to an invitation to a party and had become confused about the address.

The information in this case charged appellant with the offense of first degree burglary. As applicable to this case, the crime of burglary in the first degree is committed when the accused knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure for the purpose of committing a crime therein and when there is present in the structure another person who is not a participant in the crime. Section 569.160, RSMo 1986. In contrast, the crime of trespass in the first degree is committed when the accused knowingly enters unlawfully or knowingly remains unlawfully in a building or inhabitable structure *or upon real property.* (Emphasis added). Entering or remaining upon real property does not constitute trespass unless the property is fenced or notice of the exclusion of intruders is supplied by actual communication or posting. Section 569.140, RSMo 1986.

The factual elements of the proof in this case which appellant contests center on the argument that appellant was not shown to have entered the Norris residence unlawfully but rather at the implied invitation of Norris when he opened the door and held it wide without protest as appellant and Jett entered. The contention is irrelevant. The undisputed evidence was that the front yard of the premises was fenced, a sign was posted to beware of the dog and appellant himself opened the gate in the fence to gain admittance to the yard. Whatever the jury's view may have been of testimony as to events which followed, the proof was adequate to support conviction of first degree trespass. Appellant knowingly and unlawfully entered upon real property which was fenced and which was posted with a sign intended to discourage intruders. Appellant's first point is denied.

In his second point, appellant complains of the use of the words "firmly convinced" in the jury instructions patterned after MAI–CR3rd 300.02 and 302.04. The contention is that this language tends to reduce the state's burden of proof to establish the guilt of the accused beyond a reasonable doubt. This same argument has been regularly advanced and uniformly rejected in numerous cases all of which approve the language of the pattern instructions. *State v. Guinan,* 732 S.W.2d 174, 177–78 (Mo. banc), *cert. denied,* — U.S. —, 108 S.Ct. 308, 98 L.Ed.2d 266 (1987); *State v. Sandles,* 740 S.W.2d 169, 175 (Mo. banc 1987), *cert. denied,* — U.S. —, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988). The point is denied.

The third claim of error is based upon the closing portion of the prosecuting attorney's argument to the jury. Responding to defense counsel's closing argument, the prosecutor said:

He talked about the illogicalness of these two men going in there without a weapon. Well, folks, criminals are not smart. Most of them aren't. Why should they get credit because they didn't plan it out right? They were drunk; they were out that night looking for trouble. Isn't it funny how certain people always seem to

end up in the middle of things and in trouble?

Appellant notes that because he testified, the jury was aware he had previous convictions for possession of marijuana, stealing from the person, first degree burglary and exhibiting a deadly weapon. He says the argument quoted above suggested he must be guilty of the current offense because he had been in trouble before. Such an argument is, as appellant says, clearly improper.

A trial court has broad discretion to control closing arguments and a wide latitude is to be accorded counsel in his summary. *State v. Bryant*, 741 S.W.2d 797, 799 (Mo.App.1987). Only when the argument is plainly unwarranted and has a prejudicial effect on the jury's determination will an abuse of the trial court's discretion be found. *State v. Fogle*, 740 S.W.2d 217, 226 (Mo.App.1987). When the complained of remarks come in the rebuttal portion of argument by the state, the court may consider whether the argument was invited. A prosecuting attorney may go further by way of retaliation in answering the argument of defense counsel than would be permitted in the first instance. *State v. Murphy*, 739 S.W.2d 565, 570 (Mo. App.1987).

In the present case, defense counsel made the following argument to the jury:

These guys aren't perfect. They have been in trouble before. But Instructions Nos. 16 and 17 tell you that you can't judge them because of their past. They paid for what they have done before. They made mistakes when they were younger. It makes you wonder if that ain't the reason they are here.

The thrust of the defense argument was that appellant and his companion were bumblers and were the victims of circumstances, having unluckily selected the house to enter where three young men were armed and ready to assault them. The argument also suggested that appellant's prior criminal record was a factor in the decision to prosecute. The state's argument was retaliatory and appropriate to draw to the jury's attention to the fallacy in the claim that appellant should be exonerated because he was inept. It was also appropriate to suggest that appellant's problems, including his prior convictions, were the consequences of his own misconduct, however imperfectly executed. The objection to the state's argument was properly overruled.

Appellant gives exceedingly brief treatment to his fourth point which contends the court erred in overruling the defense objection to the state's closing argument in which the prosecuting attorney said:

Do you want to be responsible for letting these two men go sending them back out in our community where you and I live?

Appellant contends this argument, implanting fear in the minds of the jurors for their own safety, is not permitted, citing *State v. Groves*, 295 S.W.2d 169 (Mo.1956); *State v. Ellinger*, 549 S.W.2d 136 (Mo.App.1977), and *State v. Couch*, 523 S.W.2d 612 (Mo. App.1975). These cited cases involved arguments which were condemned because they drew the jury's attention to possible harm each juror, or members of his family, might suffer at the hands of the defendant if he were not convicted. For example, in *Groves*, the prosecuting attorney argued: "Don't let him (the defendant) out running around the streets cause if any of you have any daughters and if this defendant ever got the opportunity your daughter could be the next one, or your grandchild or something."

The argument made in this case did not attempt to convey the risk to members of the jury or to their families incident to acquittal of appellant, the vice present in the comments made in the cited cases. Instead, the argument called to the jury's attention their responsibility to uphold the law and the consequences if they failed to do so. It is permissible for a prosecutor to argue the necessity for law enforcement, the duty of the jury to convict the defendant to prevent crime and the results to society of a failure to uphold the law. *State v. Holt*, 660 S.W.2d 735, 738 (Mo.App. 1983). We find no error in overruling appellant's objection to the quoted argument.

■ In a final point, appellant argues that a mistrial should have been declared when the prosecutor asked co-defendant Ronald Jett, "Who was the first person you told this story to, your attorney?" Although an objection to the question was sustained and Jett made no answer, a mistrial was denied.

It is assumed that appellant's point of error is based on an accused's Fifth Amendment right not to be compelled to testify against himself and the related proposition that post-arrest silence may not be employed to suggest guilt on the part of the accused. The problem with appellant's argument here is that if the question did infringe upon a protected right against selfincrimination, it was not appellant's right which was invaded, but the right of Ronald Jett. Jett has taken no appeal and therefore no cognizable error is presented. Appellant has no standing to raise a constitutional claim as surrogate for his co-defendant.

Even were it to be assumed, as appellant argues, that the impact of the question put to Jett fell equally on both defendants, the record on appeal fails to demonstrate that the question was improper. Quite apparently, if Jett were subject to cross-examination about his previous silence, the court could not have erred in failing to grant a mistrial.

In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the court held that statements made by an accused, and we assume the failure of the accused to make any statement,[2] during custodial interrogation could not be used in a prosecution unless by appropriate warning the accused has been advised of his privilege against self-incrimination. Custodial interrogation means questioning conducted after the accused has been taken into custody or otherwise deprived of his freedom in any significant way. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612.

Where the accused later offers an explanation for his conduct under circumstances suggesting he would naturally have given the explanation earlier if it were true, the previous silence of the accused may be used for impeachment purposes if the *Miranda* concept is not implicated. *Fletcher v. Weir*, 455 U.S. 603, 606–07, 102 S.Ct. 1309, 1311–12, 71 L.Ed.2d 490 (1982). The opinion in *Fletcher* observes that it is the government action involved in giving the *Miranda* warning which provides the assurance to the defendant as an essential feature of custodial interrogation. Without the warning, of course, no use may be made of the product derived from the interrogation. If, however, no *Miranda* warning is required because no custodial interrogation has been conducted, then no constitutional right is infringed if the defendant is impeached by showing that his explanation for his conduct as non-criminal has belatedly been given.

In the subject case, the record contains no information as to when Ronald Jett was taken into custody, except by inference from the presence of a police guard at the hospital. More importantly, there is no contention or suggestion that Jett was ever subjected to custodial interrogation or was required to be advised of his rights pursuant to *Miranda*. It therefore follows that his pre-arrest and post-arrest silences were proper subjects for the jury to consider as impeachment evidence. The trial court committed no error in refusing to grant a mistrial.

The judgment is affirmed.

All concur.

---

2. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976).